United States District Court
Southern District of Texas

**ENTERED**

March 31, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MELISSA AGUERO RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:24-CV-00541 |
| | § | |
| PHARR-SAN JUAN-ALAMO | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Pharr-San Juan-Alamo Independent Schol District's Motion to Dismiss Plaintiff Melissa Ramirez's original complaint. (Dkt. No. 10). After careful consideration, the Court finds that Defendant's motion should be and is **DENIED**.

### Background

This dispute arises from the termination, by contract nonrenewal, of Plaintiff Melissa Ramirez, a former Professional Development Director who worked for Defendant Pharr-San Juan-Alamo Independent Schol District (PSJA ISD). Dkt. No. 1, Exh. 1, at ¶5.1. On October 30, 2023, after being diagnosed with major depressive disorder with neurovegetative symptoms, Plaintiff commenced leave from her job under the Family and Medical Leave Act (FMLA), which in relevant part entitles an employee to 12 weeks of unpaid leave for the care of one's own serious medical condition and protects her right to be reinstated afterwards. *Id*.; 29 U.S.C. § 2612(a)(1)(D). Plaintiff says her FMLA leave was approved by her employer after submission of an FMLA form. Dkt. No. 1, Exh. 1, at ¶5.1.  Although Plaintiff's leave was initially set to expire on February 12, 2024, PSJA ISD allowed Plaintiff to use her accumulated sick leave days to extend her leave until April 2, 2024. *Id*. Plaintiff returned to work on April 3, 2024. *Id*.

1 / 10

Following her return, Plaintiff claims that her office location was changed twice—allegedly without assistance in relocating her belongings—to incongruous locations such as the ISD's police station. *Id*. at ¶ 5.3. Then, on June 3, 2024, Plaintiff received an email from the Assistant Superintendent for Human Resources Rebeca Garza which notified her that "[t]he superintendent is not planning to take your current contract for renewal." *Id*. at ¶ 5.2. A formal letter confirming this decision was sent by Garza on July 18, 2024, stating that Plaintiff's employment would terminate on August 20, 2024. *Id*. at ¶ 5.3. Plaintiff claims that until then, she was under no notice of any reason—performance issues or otherwise—as to why her job might be in jeopardy. *Id*. at ¶ 5.2. Plaintiff states that she had never been evaluated by Garza or PSJA ISD's Superintendent Alejandro Elias. *Id*. Moreover, Plaintiff claims that neither the letter nor the email provided her with any explanation as to why she was being terminated, nor did Garza or Elias ever meet with her regarding the reason for her termination. *Id*. at ¶ 5.4.

Plaintiff brought suit in state court, contending that PSJA ISD terminated her position with the school district in retaliation for taking FMLA leave, both violating the Act and interfering with her rights under it. 29 U.S.C. § 2612(a)(2). After removal on federal-question grounds, Defendant brought the instant motion to dismiss. Dkt. No. 10. Defendant puts forward two arguments: first, that Plaintiff's FMLA retaliation claim is barred by PSJA ISD's sovereign immunity under the Eleventh Amendment and should be dismissed under Rule 12(b)(1); and second, even if it is not barred, that Plaintiff's pleading offers no evidence of the retaliation element of an FMLA retaliation claim—in other words, no evidence that Plaintiff was terminated *because* she availed herself of FMLA leave—and should be dismissed under Rule 12(b)(6).

After careful consideration, the Court finds neither argument convincing. Defendant ISD does not qualify as an "arm of the state" so as to be eligible for state sovereign immunity under

the Eleventh Amendment; furthermore, Plaintiff has plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

### Standard of Review

A court properly dismisses a case for lack of subject-matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)); *see* FED. R. CIV. P. 12(b)(1).  A party challenging jurisdiction under Rule 12(b)(1) may do so through a "facial attack" on the complaint, or through a "factual attack" relying on evidence outside the pleadings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980).  The former "requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.*  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

On the other hand, "Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's 'failure to state a claim upon which relief can be granted,'" and is read in conjunction with the federal pleading standard. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting FED. R. CIV. P. 12(b)(6)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-68 (2009); FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief[.]").  "Thus, claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law,'" and also "if the complaint does not contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Inclusive Cmtys. Project*, 920 F.3d at 899 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Iqbal*, 556 U.S. at 678).  The "plausibility" standard does not require detailed factual allegations, but a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *accord Iqbal*, 556 U.S. at 678.  To "show" that the pleader is entitled to relief, the well-pleaded facts of the complaint and any other matters properly considered[1] must allow the court, drawing on its "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## Analysis

### I.      Sovereign Immunity

The Court must begin with the question of subject matter jurisdiction, taking, in this case, the allegations in Plaintiff's complaint as true for the purposes of the motion. Defendant argues that because PSJA ISD "a political subdivision of the state," Defendant is entitled to Eleventh Amendment sovereign immunity. Therefore, says Defendant, Plaintiff is required to establish jurisdiction by demonstrating a legislative abrogation of that sovereign immunity. Under the Supreme Court's decision in *Coleman v. Court of Appeals of Maryland*, the "the [FMLA's] self-care provision is not a valid abrogation of the States' immunity from suit." 566 U.S. 30, 37 (2012).

However, Defendant's argument begins from an assumed premise: that PSJA ISD is indeed an "arm of the state" protected by sovereign immunity. In order for a party to be protected by the

---

[1]  "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint").

"background constitutional principle that states, as separate sovereigns, are inherently immune from suit without their consent," that party must either be a state, or an "arm of the state"—that is, an "entit[y] which [is] effectively the state itself because 'the state is the real, substantial party in interest' to the lawsuit." *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 178 (5th Cir. 2023) (quoting *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999)).

On first impression, a court must use the *Clark* factors to determine whether a type of entity is an arm of the state. *See Clark v. Tarrant Cnty.*, 798 F.2d 736, 744–45 (5th Cir. 1986).[2] As Plaintiff points out, however, the Fifth Circuit's opinion in *Springboards to Education, Inc. v. McAllen Independent School District* controls the analysis here. In that case, the Fifth Circuit, extensively citing Texas case law and statutes, determined that McAllen Independent School District (ISD) was not an arm of the state for the purposes of the Eleventh Amendment. *McAllen*, 62 F.4th at 183–84. And even though the neighboring Mission ISD "depends on the state for roughly 72% of its funding, which is a higher proportion" than McAllen ISD (affecting *Clark* factor 2), the Court still relied squarely on *McAllen* to find that "Mission is not an arm of the state for the purposes of the Eleventh Amendment" either, and "so it is not entitled to immunity." *Springboards to Educ., Inc. v. Mission Indep. Sch. Dist.*, No. 21-40337, 2023 WL 3094185, at *2 (5th Cir. Apr. 26, 2023).

PSJA ISD is an independent school district similar to its neighboring Mission and McAllen ISDs. *See San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 284 (Tex. 1996) ("[A]n independent school district is more like a city or county than it is like an arm of the State of Texas and is amenable to suit in federal court under the Eleventh Amendment."). Just as in the *Mission*

---

[2] The *Clark* factors are as follows: "(1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether it has the right to hold and use property." *McAllen*, 62 F.4th at 178–79.

case, PSJA ISD is "bound by the same Texas case law and statutes as the school district in *McAllen*." *Id*. Neither party has claimed that the source of PSJA ISD's funding is significantly different in any way. Even if it was, PSJA ISD would still "maintain the power to levy certain taxes and issue bonds," *McAllen*, 62 F.4th at 183–84 (citing TEX. EDUC. CODE §§ 45.001, 45.002), and "[t]he ability to self-finance weighs heavily against immunity," *id*. at 184 (citing *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 346 (5th Cir. 1998)). Otherwise, the parties have not identified any notable differences between PSJA ISD and the aforementioned school districts that might affect this Court's *Clark*-factor analysis. Absent some distinction, *McAllen* controls.

Therefore, PSJA ISD is not an "arm of the state" for purposes of sovereign immunity, and thus is not subject to such immunity; Defendant's question of abrogation is not reached. Defendant's Rule 12(b)(1) Motion to Dismiss is denied.

## II. Failure to State a Claim

Defendant also moves to dismiss Plaintiff's claim under Rule 12(b)(6) for failure to state a claim. Plaintiff seems to plead both an FMLA interference claim and an FMLA retaliation claim. Dkt. No. 1, Exh. 1, at ¶ 6.1; *see also Way v. City of Missouri City*, 133 F.4th 509, 523–25 (5th Cir. 2025) (describing the elements of the two claims). However, Defendant's challenge focuses solely on Plaintiff's retaliation claim. To make out a prima facie case of FMLA retaliation, a plaintiff must establish: "(1) [s]he is protected under the FMLA; (2) [s]he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (quoting *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)). "If she does that, the burden shifts to [Defendant] to articulate a legitimate, nonretaliatory reason for firing her." *Watkins v.*

6 / 10

*Tregre*, 997 F.3d 275, 284 (5th Cir. 2021). If the Defendant does that, "the burden shifts back to [Plaintiff] to show that [Defendant]'s proffered reason is pretext for retaliation." *Id*.

At this stage, Defendant does not dispute that Plaintiff was protected under the FMLA, nor that she suffered an adverse employment decision. Rather, Defendant argues that Plaintiff has not shown the third element: that the adverse decision was made because of Plaintiff's request for leave. First, Defendant claims that "[t]emporal proximity alone does not establish causation without additional evidence of discriminatory intent." Dkt. No. 10, at p.5. But that is not the law. Rather, the Supreme Court has indicated that a plaintiff can likely establish a causal link at the *prima facie* stage through "very close" temporal proximity between a plaintiff's leave and her termination. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Indeed, the Fifth Circuit has repeatedly found that "temporal proximity between the end of FMLA leave and an adverse employment action can substantiate a causal connection for purposes of establishing a prima facie case." *Murillo v. City of Granbury*, No. 22-11163, 2023 WL 6393191, at *3 (5th Cir. Oct." 2, 2023) (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768–69 (5th Cir. 2001)). Termination "one month after [Plaintiff]'s FMLA leave expire[s] . . . is close enough in time to create a causal connection." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 528 (5th Cir. 2021). And yet, it is likely that "two-and-one-half months is the outermost limit." *Decou-Snowton v. Jefferson Par.*, No. 24-30079, 2024 WL 4879466, at *6 (5th Cir. Nov. 25, 2024) (collecting cases); *Campos*, 10 F.4th at 528. Finally, "the plaintiff does not have to show that the protected activity is the only cause of her termination." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

Plaintiff returned to work at conclusion of her FMLA leave on April 3, 2024. There is some ambiguity, however, as to which date to consider Defendant's adverse employment action. Plaintiff says she was first notified of her impending contract termination via an informal email

from the HR Director on June 3, 2024. Dkt. No. 1, Exh. 1, at ¶ 5.2. She received an official letter stating the same on July 18, 2024, and her contract termination was effective on August 20, 2024. *Id*. at ¶ 5.3. Measuring from Plaintiff's initial email notice would place the adverse action exactly two months from the end of her FMLA leave. Measuring from her official letter or actual termination date, however, would take Plaintiff well outside the temporal proximity sufficient to create a causal connection. There is some support for considering Plaintiff's first notice to be an adverse employment action. *See Vicari v. Ysleta Indep. Sch. Dist.*, 546 F. Supp. 2d 387, 412–13 (W.D. Tex.) (finding notice of contract nonrenewal to be Title VII adverse employment action even though plaintiff resigned before official termination). After all, if a court may only consider Plaintiff's official termination date as the earliest date of adverse action, an employer wishing to retaliatorily terminate their employee could avoid a causation finding by scheduling all termination dates several months out from employee leave. Rather, as long as consequences do actually result, *see Pierce v. Texas Dep't of Crim. Just., Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994), it makes more sense to ask when the *decision* to take adverse employment action occurred.

Here, Plaintiff's pleadings indicate that decision occurred exactly two months after she returned from leave. Although borderline, that period of time could support a causal connection on its own. *See Campos*, 10 F.4th at 528 (agreeing with a case that "allow[ed] two-and-a-half months to establish causation in a Title VII retaliation claim"). Even if it could not, however, Plaintiff has plead other facts that could help bolster causation. In evaluating retaliation cases courts can consider several other factors, including "the employee's past disciplinary record, and whether the employer followed its usual procedures in carrying out the adverse employment action." *Perkins v. Child Care Assocs.*, 751 F. App'x 469, 474 (5th Cir. 2018) (collecting cases).

Plaintiff has alleged that she was "under no notice of any performance issues or threat from Defendant[] . . . that Plaintiff's job was in jeopardy" and that she "had never been evaluated by

8 / 10

Rebeca Garza or Superintendent Elias during the duration of Plaintiff's employment." Dkt. No. 1, Exh. 1, at ¶ 5.2. Even more relevant is Plaintiff's claim that she was provided with no explanation for her termination, either directly or in her notice letters; indeed, there is no indication that she has been provided with an explanation to this day. *Id*. at ¶¶ 5.3–5.4. Plaintiff has also alleged that Defendant changed her office location twice—without providing moving assistance—soon after her return from FMLA leave, the second of which was incongruously into the ISD police station. These actions could plausibly imply at least some level of hostility. Accepting her facts as true, then, Plaintiff's facts are far from the employee's in *Mauder*, who's "termination should not and did not take him by surprise." *Mauder*, 446 F.3d at 585. The dearth of explanation for Plaintiff's firing says otherwise. The foregoing facts and the proximity of Plaintiff's leave to her termination, "taken as a whole," *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 335 (5th Cir. 2005), are sufficient to state a *prima facie* claim of FMLA discrimination.

Under the usual *McDonnell Douglas* burden-shifting framework applied in these cases,[3] the burden would now shift to Defendant to articulate a legitimate, nonretaliatory reason for firing Plaintiff, after which Plaintiff would have to show that reason was a mere pretext. But the burden only shifts back to Plaintiff "*if*" Defendant provides such a reason. *Tregre*, 997 F.3d at 284 (emphasis added). At this point in the case, Defendant has articulated no reason, much less a legitimate, nonretaliatory one, for Plaintiff's termination. "Since Defendant[] ha[s] not offered a legitimate or nonretaliatory reason for terminating Plaintiff, Plaintiff is not required to prove pretext regarding Defendant[']s stated reason for termination." *Crane v. Gore Design Completion, Ltd.*, 21 F. Supp. 3d 769, 781 (W.D. Tex. 2014).

---

[3] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019).

Therefore, the Court finds that Plaintiff has met the basic requirements of Rule 12(b)(6); she has plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, Defendant's Rule 12(b)(6) motion to dismiss fails.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**.

SO ORDERED March 31, 2026, at McAllen, Texas.

Randy Crane
Chief United States District Judge